THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **INTERMOUNTAIN TECHNOLOGY GROUP, LLC**, a Utah limited liability company, and **RYAN DAY**, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>**ALTIGEN COMMUNICATIONS, INC.**, a Delaware corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:24CV00538 DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on Defendant/Counterclaimant Altigen Communications, Inc.'s (Altigen's) Motion for Summary Judgment as to Liability. The court held a hearing on August 21, 2025. At the hearing, Altigen was represented by Eric B. Evans. Plaintiffs/ Counterclaim Defendants Intermountain Technology Group dba ZAACT Consulting ("ZAACT") and Ryan Day ("Mr. Day") (together referred to as "Plaintiffs") were represented by John P. Mertens and Jacob B. Stone. At the conclusion of the hearing, the court took the matter under advisement. Now being fully informed, the court issues the following Memorandum Decision and Order Granting Defendant's Motion for Summary Judgment as to Liability on their breach of contract and declaratory judgment counterclaims.

**BACKGROUND**

This case involves a dispute concerning an Asset Purchase Agreement ("APA") between Altigen and Plaintiffs ZAACT and Ryan Day. Altigen, which was essentially purchasing Plaintiffs' business, claims that Plaintiffs breached certain warranties contained in the APA.

Altigen is a leading provider of cloud communications solutions and technology consulting services that has partnered with some of the world's most innovative companies, including Microsoft, Amazon, and Fiserv. Plaintiffs were a consulting firm that provided services focused on the Microsoft technology stack. On March 4, 2022, Altigen and Plaintiffs executed the APA in which Plaintiffs agreed to sell certain assets to Altigen, and Altigen agreed to acquire certain assets of ZAACT in exchange for a combination of cash and stock in Altigen.

While not at issue in the instant motion, Plaintiffs allege in their Complaint that Altigen paid a portion of the required consideration but has failed and refused to pay all consideration owed under the APA. Instead of making the payments of cash and stock due on or about May 6, 2024, Plaintiffs contend that Altigen sent a letter purporting to be a claim against a warranty in the APA. Plaintiffs argue that the letter failed to identify the substance of Altigen's claim and that the letter was sent without a reasonable or good faith belief that a valid claim under the APA existed. Moreover, Plaintiffs contend that the letter was an attempt to mislead and defraud Plaintiffs.

In responding to Plaintiffs' Complaint, Altigen has asserted counterclaims against Plaintiffs, alleging that Plaintiffs breached their warranty under Section 2.15 the APA. In the instant motion, Altigen has moved for summary judgment as to liability on Plaintiffs' breach of

contract and declaratory judgment claims and on Altigen's breach of contract and declaratory judgment counterclaims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The moving party has the initial burden of showing an absence of evidence to support the non-moving party's case.[2] The non-moving party must then "identify specific facts that show the existence of a genuine issue of material fact," and "must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."[3]

In their Opposition Memorandum, Plaintiffs have purported to dispute several of the facts set forth in Altigen's Statement of Material Facts. The court finds, however, that none of the disputes raise genuine issues of material fact, as the disputes are irrelevant for purposes of deciding the motion or are subjective interpretations of the contract language. Moreover, Plaintiffs' "additional facts" are not essential to the disposition of Altigen's claims.

## DISCUSSION

Altigen argues that Plaintiffs breached the following warranty (emphasized below in italics) under Section 2.15 of the APA:

> 2.15 Material Customers; Material Suppliers. Schedule 2.15 contains a list of (a) the 10 largest customers of Seller (the "Material Customers"), based on the gross revenues of Seller for the 12 months ending January 31, 2022, and

---

[1] Fed. R. Civ. P. 56(a).

[2] *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022).

[3] *Id.* (quoting *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995)).

>  (b) the 10 largest vendors of Seller (the "Material Vendors"), based on the gross dollar purchases of Seller for the 12 months ending January 31, 2022. Seller has not received within the past 12 months prior to the date hereof any written (or, to Seller's Knowledge, oral) notice from (x) any of the Material Customers or Material Vendors that such customer or vendor has terminated or intends to terminate or materially change its business relationship with Seller or (y) any of the Material Customers that such customer has requested or attempted to negotiate any discount with respect to any Contract. Seller does not have any outstanding material dispute concerning its or their respective products or services with any Material Customer or Material Vendor and, *to Seller's Knowledge, there is no material dissatisfaction on the part of any Material Customer or Material Vendor and there is no circumstance that exists that would reasonably be expected to cause any Material Customer or Material Vendor to terminate or materially change its business relationship with Seller*.

Altigen argues that this warranty was effective as of the APA's effective date (March 6, 2022) and the APA's closing date (May 6, 2022)—and that the warranty survives until three years after the closing date (May 6, 2025).[4] And Altigen has provided undisputed evidence that, as of the May 6, 2022, the closing date, senior ZAACT employees knew of circumstances that "would reasonably be expected to cause" three Material Customers "to terminate or materially change their business relationship" with ZAACT because (1) one Material Customer [ABOUT Healthcare, Inc.] had decided to cease purchasing ZAACT services, (2) another Material Customer [IHC] had made a technical decision that made future ZAACT services unnecessary, and (3) a third Material Customer [Boral] had decided to hire the ZAACT consultant who

---

[4] *See id.* §§ 1.5(a), 5.10(a).

handled substantially all of ZAACT's work for it directly, thereby ending its need for ZAACT's services.

Altigen contends that the purchase of ZAACT's assets was conditioned on the truth of this, and other, representations and warranties. Thus, according to Altigen, Plaintiffs' breach of this warranty is a manifest breach of the APA and Plaintiffs must indemnify Altigen for any losses arising out of their breach.[5] Further, Altigen argues that it is entitled to offset the damages caused by Plaintiffs' breach against any Deferred Consideration that would otherwise be owed to Plaintiffs.[6]

Moreover, Altigen argues, even setting aside the undisputed evidence of a breach of warranty that entitles Altigen to indemnification, Plaintiffs waived their right to contest Altigen's claims because Plaintiffs failed to timely respond to Altigen's Claim Notice.[7] Altigen sent its Claim Notice on April 26, 2024, explaining that it was seeking indemnification for the damages caused by Plaintiffs' breach of the material warranties and representations in Section 2.15.[8] Under Section 5.10(d) of the APA, Plaintiffs had to respond within 15 days or "any Claim specified in [the] Claim Notice will be conclusively deemed an immediately due and payable obligation of the Indemnifying Party."[9] It is undisputed that Plaintiffs failed to respond within 15

---

[5] *Id.* § 5.10(b).

[6] *Id.* § 5.10(f).

[7] *Id.* § 5.10(d).

[8] *Id.*, Ex. B.

[9] *Id.*, Ex. A § 5.10(d).

5

days of the Claim Notice as required by Section 5.10(d), and thus, according to Altigen, Plaintiffs are conclusively deemed liable for the damages caused by their breach.[10]

As a result, Altigen argues that the court should enter summary judgment in favor of Altigen and against Plaintiffs on all of Plaintiffs' claims and all of Altigen's counterclaims because it cannot reasonably be disputed that Plaintiffs are liable for the damages caused by their breach of Section 2.15 of the APA.

Plaintiffs, on the other hand, argue that Altigen has failed to properly authenticate its proferred evidence (various emails) against Plaintiffs, and the court should therefore deny the motion on this ground alone. Plaintiffs also request that the court defer ruling on the motion so that they can conduct further discovery. Finally, they argue, even if the court considers the email evidence on which Altigen has relied, Plaintiffs contend that the emails do not reflect any change in, or termination of, the clients' relationships with ZAACT. Rather, Plaintiffs argue, ZAACT performed project-based work, and the proffered emails show no change in that pattern. According to Plaintiffs, none of these emails indicate a termination of or material change to ZAACT's relationship with these customers. Rather, each of these clients had multiple work orders with ZAACT over the course of their relationship, and it was expected that each of them would continue to bring IT-related consulting work to Altigen moving forward. Plaintiffs maintain that the end of a project—and a gap before engaging on the next project—is status quo for ZAACT's relationships with its customers, not a "termination or material change in their relationship" that would have breached the warranty.

---

[10] *Id.*

The court agrees with Altigen and rejects Plaintiffs' arguments. First, Altigen's evidence has been properly authenticated because the documents were produced to Altigen by Plaintiffs themselves. Moreover, in his declaration, Altigen's counsel does not attest to the facts contained within the documents, only that they are true and correct copies. Also, because the documents had been produced by Plaintiffs, "some courts would consider them to be 'self-authenticating' and to 'constitute the admissions of a party opponent.'"[11] "Other courts have even pointed out to litigants like [defendant] that 'it is disingenuous and wasteful to object to one's own documents based upon personal knowledge or authentication.'"[12] The court finds that the documents were properly authenticated and/or were self-authenticating.

The court also declines to defer ruling on the motion under FRCP 56(d) because Plaintiffs did not comply with the rules for filing a 56(d) motion. "Rule 56(d) permits a court to defer considering a motion for summary judgment when 'a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'"[13] But Plaintiffs did not submit an affidavit or declaration regarding additional discovery. The only declaration associated with the Opposition is the Day Declaration, which contains factual assertions unrelated to Plaintiffs' 56(d) request. Plaintiffs have failed to set forth the facts they believe remain to be discovered that are essential to justifying their opposition to Altigen's motion.

---

[11] *Id.* (quoting *Anand v. BP W. Coast Prods. LLC*, 484 F. Supp 2d 1086, 1092 n.11 (C.D. Cal. 2007)).

[12] *Id.* (quoting *OFI Intern.*, 2015 WL 140134, at *3).

[13] *Trans-W. Petroleum, Inc. v. United States Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016) (emphasis added).

As to Plaintiffs' argument that the email communications at issue did not reflect any change in, or termination of, the clients' relationships with ZAACT, the court is also not persuaded. The warranty in Section 2.15 is broad and required Plaintiffs to disclose to Altigen "any circumstance" that would "reasonably be expected to cause" a "termination or material change" in Material Customers' "business relationship" with ZAACT. Plaintiffs' subjective belief that these "Material Communications" did not trigger the warranty (because the work was project-based and might pick up again in the future) is irrelevant because Delaware law governs the APA. Delaware's objective "reasonable investor" standard applies to Section 2.15, and documents produced during discovery establish that Plaintiffs did indeed believe that ZAACT's business relationship with the at-issue customers was materially changing and/or terminating. Under Delaware law, a fact is "material" for purposes of an acquisition if there is a "substantial likelihood that the . . . fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information."[14]

Thus, the appropriate inquiry is whether a reasonable investor such as Altigen would have considered the Material Communications to have "significantly altered the total mix of information" prior to acquisition.[15] The court finds, as a matter of law, that Altigen would have considered the Material Communications to have "significantly altered the total mix of information" prior to acquisition.

Plaintiffs make one additional argument that warrants consideration. Paragraph 1.5 of the APA states, in part, "[a]ll of the representations and warranties made by Seller or Owner in

---

[14] *Akorn*, 2018 WL 4719347, at *86.

[15] *Id.*

this Agreement must be (i) true and correct as of **the date hereof** and (ii) true and correct in all material respects at and as of the Closing as though made on the Closing Date (except to the extent such representations and warranties are made as of a **specified date**, in which case, such representations and warranties must be true and correct in all material respects as of such specified date)."[16]

Plaintiffs argue that "the date hereof," is the effective date of the APA, March 4, 2022. And because "the date hereof" is a "specified date," the warranty is made as of the specified date, not as of the closing date of May 6, 2022. Therefore, Plaintiffs maintain, even if the emails cited by Altigen constitute written (or to the extent they refer to phone calls, oral) notices of an intent to terminate or materially change the relationship, or a "circumstance," of such, the representations are limited to March 4, 2022, and Altigen's only allegation is that ZAACT and Mr. Day acquired relevant knowledge *after* that date—in April or May of 2022. Thus, Plaintiffs argue, Altigen has not identified any such evidence that pre-dates the signing of the APA.

As stated above, Section 1.5(a) of the APA provides that "[a]ll of the representations and warranties made by Seller or Owner in this Agreement must be (i) true and correct as of the date hereof *and* (ii) true and correct in all material respects at and as of the Closing as though made on the Closing Date (except to the extent such representations and warranties are made as of a *specified date*, in which case, such representations and warranties must be true and correct in all material respects as of such specified date)."

---

[16] *Id.* § 1.5(a) (emphasis added).

The court agrees with Altigen that Plaintiffs are mistakenly focused on the first part of paragraph 2.15, which is limited to "the date hereof." While Plaintiffs may have breached this first provision, it is not the subject of Altigen's Motion. Instead, Plaintiffs have breached the italicized portion of Section 2.15 (as set forth above). That clause does not have a specified date, and therefore, under the plain terms of the APA, Plaintiffs were required to make the representation as of both the effective date of the APA *and* the closing date.

Further, if there were any doubt that the warranty applied on the effective date and on the closing date, the reference to "Seller's Knowledge" in the operative clause in Section 2.15 dispenses with such doubt because Article VII, Section 7.1 defines "Seller's Knowledge" as follows:

> "Seller's Knowledge" means the knowledge as of the date hereof and as of the Closing Date of Owner and each member of the executive management team of Seller, each after having conducted a reasonable investigation.

Because of the reference to "Seller's Knowledge" in the last clause of Section 2.15, it clearly requires that, as of the APA's signing date and "as of the Closing Date," Plaintiffs should have made the identified disclosures.

Regarding whether Plaintiffs' failure to timely respond to Altigen's letter demanding indemnity, Plaintiffs argue that Altigen failed to satisfy the requirements established by the APA because Altigen's notice was not prompt, as Altigen waited two years before making the indemnity demand, and the letter failed to include the basis for the indemnity claim. Therefore, Plaintiffs argue, because Altigen's letter did not comply with the requirements of the APA, it did not constitute notice, and Plaintiffs' response was therefore timely.

The court also rejects this argument. Altigen has set forth why it waited two years to make its indemnity demand, there are no material disputes about the reasons set forth, and the APA does not define the term "promptly." Even if Plaintiffs' arguments had merit, the APA prevents the parties from arguing that knowledge of a potential breach is a defense to their indemnification obligations under Section 5.10. That section states, "[t]he fact that a Purchaser Indemnitee or a Seller Indemnitee conducted a due diligence investigation or had knowledge of a breach or inaccuracy of a representation or warranty, or the nonperformance or breach of a covenant or agreement, will not be a defense to any party's obligations under this Section 5.10." Id. § 5.10(j). Plaintiffs' "delay" argument is based on the assertion that "Altigen therefore knew or should have known everything it alleged it now knows about Plaintiffs' supposed breach right after closing and its purported effects as early as May 2022, and no later than April 2023, yet it waited until April 26, 2024, to send the letter." Under Section 5.10(j), however, Plaintiffs cannot rely on Altigen's purported knowledge of breach as a defense to their duty to indemnify.

Further, contrary to Plaintiffs' assertion, Altigen properly included the basis for the indemnity claim. There is no contractual requirement that Altigen provide more specification than it did. Therefore, for this independent reason, the court grants Altigen's motion based on Plaintiffs' failure to timely respond to Altigen's indemnity demand.

## CONCLUSION

Accordingly, Altigen's Motion for Summary Judgment as to Liability on their breach of contract and declaratory judgment counterclaims [ECF No. 21] is GRANTED on two independent grounds: Plaintiffs breached the plain terms of the warranty clause in APA Section 2.15, and

Plaintiffs waived their right to contest Altigen's claim because Plaintiffs failed to timely respond to Altigen's indemnity demand.

If the parties are interested in participating in a settlement conference before a magistrate judge, as suggested in the parties' recent Scheduling Order,[17] they may file a Motion for Settlement Conference, and the court will refer the case to a magistrate judge for the purpose of conducting a settlement conference. Otherwise, the parties should proceed according to the October 29, 2025, Scheduling Order.

DATED this 5th day of December 2025.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[17] ECF No. 36 at 3.